HUNTAIR, INC., and CLPK, INC.,

    Plaintiffs,

v.

SETH GLADSTONE, et al.,

    Defendants.

NO. C10-3450 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MOSER'S MOTION TO DISMISS

This matter came before the Court on February 7, 2011, on Defendant Steve Moser's motion to dismiss. After carefully reviewing the parties' written and oral arguments, the Court now GRANTS the motion to dismiss Plaintiffs' withdrawn conversion claim and DENIES the motion in all other respects for the reasons set forth below.

**BACKGROUND**

Plaintiff CLPK, LLC is a Delaware limited liability company that was formerly known as Cleanpak International, Inc., and that "transferred almost all of its assets to [Plaintiff] Huntair" in late 2009. Compl. ¶ 5. Huntair is incorporated in Delaware, and both Plaintiffs are headquartered in Oregon.

Defendant Steve Moser worked first for Cleanpak and then Huntair as a regional sales manager for the Servicor brand. His employment began in July 2006 and ended with his termination in July 2010, based on the misconduct alleged in the complaint and discussed below.

The complaint alleges that Moser was involved with Defendants Seth Gladstone, Lorna Gladstone, David Langer, and L4 Strategies, Inc. in a scheme to divert business from Plaintiffs to Reliant, a fictitious business name through which L4 Strategies allegedly does

business.[1]  Moser is an Illinois resident who worked for Plaintiffs out of Illinois, while the other Defendants, including L4 Strategies, are all based in California.

Plaintiffs allege that the Reliant scheme began by at least February or March 2010. Through that scheme, Defendants allegedly competed against Plaintiffs – notwithstanding that Moser and Seth Gladstone were employed by them – by steering business from Plaintiffs' customers to California-based Reliant. Gladstone and Moser were allegedly "to be paid commissions and/or a percentage of the profits in connection with Reliant's sales." *Id.* ¶ 4(b). They also allegedly attempted to recruit other Huntair employees to participate in the Reliant scheme.

The complaint contains specific allegations of Reliant quotes prepared by Moser, on information and belief, based on the quote numbers containing Moser's initials, "SM." Moser does not dispute that he prepared these quotes, but he does argue that he did so out of Illinois and not in California. Moser is alleged to have been integrally involved in Reliant's business, and to have communicated about Reliant via telephone and using electronic mail. It appears that none of the companies for whom Moser is alleged to have prepared quotes is based in California.

In June 2010, Huntair told Gladstone and Moser to cooperate fully with an investigation relating to the above alleged activities. Both are alleged to have failed to do so: "Gladstone and Moser denied and/or downplayed their knowledge of and involvement in Reliant's business. Neither Gladstone nor Moser disclosed, for example, their involvement in preparing and sending Reliant quotes to Servicor's customers and potential customers." *Id.* ¶ 49.

Huntair terminated both Moser and Gladstone for cause in July 2010. Both individuals are alleged to have "continued to pursue business for Reliant [after their terminations] and, in doing so, misled at least one customer as to the nature of their relationship with, and whether they were still affiliated with, Servicor." *Id.* ¶ 50.

---

[1] The Gladstones are also alleged to have received improper kickbacks through a second scheme, referred to in the complaint as the "Tringali scheme."

2

Based on the above allegations, Plaintiffs assert eight causes of action against Moser: (1) breach of the duty of loyalty; (2) fraud; (3) intentional interference with prospective economic advantage; (4) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (5) RICO conspiracy, in violation of 18 U.S.C. § 1962(d); (6) violation of the Lanham Act, 15 U.S.C. § 1125(a); (7) unlawful and unfair business practices in violation of California Business and Professions Code section 17200; and (8) conversion.

Moser moves to dismiss the complaint for lack of personal jurisdiction and challenges whether this district is an appropriate venue. Moser also challenges the sufficiency of all eight causes of action under Federal Rule of Civil Procedure 12(b)(6). All other Defendants have answered the complaint.

## DISCUSSION

### I. Personal Jurisdiction

Moser first moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Plaintiffs contend that this Court has specific jurisdiction over Moser based on his contacts with California and that, independently, 18 U.S.C. § 1965(b) also confers jurisdiction.[2]

Section 1965(b) allows courts to exercise jurisdiction over non-resident defendants who allegedly violated RICO by participation in a multidistrict conspiracy. For this provision to apply, "the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). Here, Plaintiffs have stated only that they "are not aware of any other district in which a court would have personal jurisdiction over all of the defendants." Opp'n

---

[2] Plaintiffs' opposition referred to 15 U.S.C. § 1965(b), but the text of their argument makes clear that they mean 18 U.S.C. § 1965(b).

3

at 9 n.3. This conclusory assertion is insufficient to meet Plaintiffs' burden to demonstrate that jurisdiction under § 1965(b) would be appropriate.

Thus, Moser's motion turns on traditional personal jurisdiction analysis. California's long-arm statute is co-extensive with federal due process requirements, and the Court may therefore exercise personal jurisdiction over Moser as long as doing so comports with federal constitutional standards. Cal. Civ. Proc. Code § 410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). To satisfy these standards, the Court may only exercise personal jurisdiction over a defendant who has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The following three-pronged test must be satisfied before this Court can assert specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).[3] "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If those prongs are met, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted).

---

[3] By contrast, "[a] defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts. This is known as general jurisdiction," and is not at issue here. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

In conducting its jurisdictional analysis, the Court must assume as true all "uncontroverted allegations in plaintiff's complaint" and resolve all "conflicts between the facts contained in the parties' affidavits . . . in plaintiff's favor." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks and alterations omitted). "Although the burden is on the plaintiff to demonstrate that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (internal quotation marks omitted).

### A.      **Purposeful Direction or Purposeful Availment**

"Purposeful availment" and "purposeful direction" are distinct tests, with the former generally applied to contract claims and the latter to tort claims. *Id.* at 1128. The parties agree that jurisdiction in this case may be founded on either test.

Purposeful direction "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co.*, 303 F.3d at 1111 (explaining how the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), is construed in the Ninth Circuit). A showing of purposeful availment, on the other hand, "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there," *Schwarzenegger*, 374 F.3d at 802, or other "affirmative conduct which allows or promotes the transaction of business within the forum state," *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). By "purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, . . . a defendant must – as a quid pro quo – submit to the burdens of litigation in that forum." *Schwarzenegger*, 374 F.3d at 802 (internal quotation marks and citations omitted).

It is not disputed that Moser lives and worked in Illinois, and that the companies for which Moser allegedly prepared Reliant quotes are located outside of California. Moser is also correct that it would be improper for this Court to exercise personal jurisdiction based

5

solely on acts performed in California by Moser's alleged co-conspirators. *E.g., Yen v. Buchholz*, No. C08-3535 RMW, 2010 U.S. Dist. LEXIS 42393, at *17-18 (N.D. Cal. Apr. 30, 2010); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010). Similarly, "an individual's contract with an out-of-state party *alone*" cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).

However, under Plaintiffs' allegations, which must be presumed true at this stage of the proceedings, Moser benefitted from a relationship with California residents by which he would receive additional compensation from California-based Reliant. Moser does not deny communicating via e-mail or telephone with the California defendants about the alleged Reliant scheme, nor does he deny that the out-of-state companies were directed to send invoices to Reliant in California. Moser does contend that he only visited California to conduct business on behalf of Plaintiffs and not for any improper purpose, but Plaintiffs submitted a declaration stating that Defendant Gladstone explained that "he and Moser discussed Reliant business when Moser was in California," and that "when he and Moser got together in San Mateo, California in June 2010, they discussed how they could keep Huntair from finding out about their involvement in Reliant's business." Albert Decl. ¶ 9.[4] At this stage of the proceedings, this disputed fact – whether Moser committed any of the alleged misconduct in California – must be resolved in Plaintiffs' favor.

In addition, "ignoring the consequences (and profits) that flowed from" the alleged in-state activity, even if not performed directly by the out-of-state defendant, "is precisely the kind of 'rigid and formalistic' analysis that this Court must avoid." *Valentine v. NebuAd, Inc.*, No. C08-5113 TEH, 2009 U.S. Dist. LEXIS 93454, at *23 (N.D. Cal. Oct. 6, 2009) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)). Instead, the Court must take a "highly realistic" approach and consider the "future consequences" that "are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (internal quotation

---

[4] Moser objected to consideration of the Albert Declaration, but only as to the 12(b)(6) motion. He did not raise any evidentiary objections to the declaration.

6

1  marks omitted).  In this case, Moser is alleged to have conspired with several California
2  defendants to direct business away from Plaintiffs to Reliant, a fictitious business name of a
3  California-based company.  All funds are alleged to have flowed through Reliant, which
4  operated under the protection of California's laws to the benefit of all Defendants, including
5  Moser.  This is sufficient to make a prima facie case that Moser purposefully availed himself
6  of the benefits of doing business in California.

### B.      Arising out of or Relating to the Forum Activities

The second prong of personal jurisdiction analysis is whether the claim "arises out of or relates to the defendant's forum-related activities."  *Dole Food Co.*, 303 F.3d at 1111.  This prong is satisfied here, where Plaintiffs' claims are based on the allegations concerning Moser's involvement in the California-based Reliant scheme.

### C.      Reasonableness

The third and final prong is whether the exercise of jurisdiction would "comport with fair play and substantial justice," or, in other words, "be reasonable."  *Id.*  The Court must balance several factors to determine "whether the exercise of jurisdiction over a nonresident defendant satisfies the reasonableness test":

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Neither party analyzed all seven of the above factors in their papers or oral argument, and this Court focuses only on Moser's arguments because it is his burden to show that exercising jurisdiction would not be reasonable.  *Schwarzenegger*, 374 F.3d at 802.  Moser's moving papers argued in the most conclusory fashion that it would be burdensome and unreasonable for Moser, an Illinois resident employed by Plaintiffs in Illinois, to defend this matter in California.  He also argued that Illinois and not California law should apply, but he abandoned that issue in his reply.  Reply at 13 ("At this point, a choice of law analysis is

7

1  unnecessary and will be addressed when and if material."). For the reasons explained above,
2  the Court rejects the manner in which Moser construes the facts – i.e., that his alleged
3  misconduct has no connection with California – and the Court similarly rejects his summary
4  argument that defending this case in California would pose an unreasonable burden on him.
5  Moser presents no evidence of any significant burden, and the allegations, if true, indicate
6  that Moser purposefully availed himself of doing business in California and should be subject
7  to "the burdens of litigation" here. *Burger King*, 471 U.S. at 476.

8  Moser raised a new argument in his reply, asserting that jurisdiction would be
9  unreasonable because he is alleged only to have been involved in the Reliant scheme and not
10 the Tringali scheme, and that he would be unfairly prejudiced by trying all claims at the same
11 time. However, the Court need not consider this argument because it was not raised in
12 Moser's moving papers. The argument is also unpersuasive, as it goes more to whether the
13 case should be bifurcated or if any potential prejudice could be cured by special jury
14 instructions, and not to whether exercising jurisdiction would be reasonable.

15 For all of the above reasons, the Court finds the three-pronged test for finding specific
16 jurisdiction to be satisfied here. Consequently, Moser's motion to dismiss for lack of
17 personal jurisdiction is DENIED.

18

19 **II.    Venue**

20 In addition to contesting personal jurisdiction, Moser also contests venue. In his
21 moving papers, he argued that venue in this district was improper and moved for dismissal
22 under Federal Rule of Civil Procedure 12(b)(3). However, in his reply papers, Moser
23 abandoned that argument and instead argued that, if personal jurisdiction were found, this
24 case should "be transferred in the interest of justice pursuant to Section 1404(a)." Reply at
25 15. The Court declines to consider a transfer motion made only in a reply brief. Moreover,
26 Moser's reply states only briefly in a footnote that, "There is no dispute that the alleged
27 injury occurred outside of California or that Mr. Moser was employed with Huntair in
28 Illinois. The witnesses as to the allegations against Mr. Moser are located in Massachusetts,

8

1 New York, Texas, Pennsylvania, North Carolina and South Carolina." *Id.* at 15 n.5. Moser
2 does not even suggest where this case should be transferred, let alone present sufficient
3 justification for doing so. In addition, contrary to Moser's conclusory assertion, Plaintiffs
4 contend that they suffered injury in California. Accordingly, Moser's motion to dismiss or
5 transfer this case based on venue considerations is DENIED.

### III. Failure To State a Claim

In addition to contesting personal jurisdiction and venue, Moser argues that Plaintiffs' claims fail under Federal Rule of Civil Procedure 12(b)(6). Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (internal quotation marks omitted). Courts may also disregard factual allegations that are controverted by any of the following: exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with

9

1 leave to amend unless it is clear that amendment could not possibly cure the complaint's
2 deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

### A. Breach of the Duty of Loyalty, Fraud, and Intentional Interference with Prospective Economic Relations

Moser argues, and Plaintiffs do not dispute, that Plaintiffs' first three causes of action – for breach of the duty of loyalty, fraud, and intentional interference with prospective economic relations – are subject to the particularized pleading requirements of Federal Rule of Civil Procedure 9(b). To satisfy these requirements, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). This generally requires plaintiffs to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988). However, where allegations rest on claims of omission, this standard is relaxed because, "[f]or example, a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987).

Moser argues that the complaint fails to sufficiently allege injury or damages as to all three claims. The Court disagrees, as the complaint contains allegations of specific transactions which Moser allegedly steered away from Plaintiffs and towards Reliant. For example:

> Moser was actively involved in steering the Williams cleanroom-related business away from Huntair/Servicor to Reliant. On information and belief, Moser told Williams that Moser could split the business between Servicor and Reliant; that Williams could issue separate purchase orders to Servicor and Reliant; and that Moser would oversee and manage the entire project, including Reliant's portion of it. In addition, Moser on information and belief was directly involved in arranging for the products and services that Reliant provided to Williams, including the installation services provided by Gladstone's brother-in-law, Emrick.

10

> . . .
>
> In mid-March 2010, Reliant diverted business away from Huntair in connection with a Servicor cleanroom project for Heraeus Quartz ("Heraeus"). Moser was involved in the Heraeus project on behalf of Huntair/Servicor. Huntair/Servicor provided the cleanroom to Heraeus, but not the FFUs [fan filter units] or installation services. On or about March 19, 2010, Reliant on information and belief submitted a quote to Heraeus to provide "cleanroom design engineering and assembly" for $10,075. The Reliant quote ended with "SM" – Steve Moser's initials. Heraeus then issued a purchase order to L4 Strategies dated March 22, 2010, for $10,075, tied to Reliant's "SM" quote, for the "development/installation of clean room."
>
> . . .
>
> On or about March 29, 2010, Martek Biosciences ("Martek") on information and belief issued either one or two purchase orders to Reliant, for $59,548 and/or $37,150. The purchase orders pertained to a Reliant quote dated March 25, 2010, with a quote number ending in "SM." In addition, Martek issued a purchase order to Huntair dated March 29, 2010. The Martek purchase order(s) to Reliant was PO # 908261; the Martek purchase order to Huntair was PO #908262. On April 1, 2010, Martek sent an email to Moser telling Moser that "hopefully you've received the formal POs." On information and belief, (1) Moser submitted one or more quotes to Martek from both Huntair and Reliant; and (2) Moser was involved in obtaining the Martek business for Reliant.

Compl. ¶¶ 31, 35, 44(b). The complaint also alleges that Moser's failure to be forthcoming about his involvement in the Reliant scheme resulted in damages in the form of "costs pertaining to Huntair's investigation." *Id.* ¶ 71. In addition, Moser does not contest that "disgorgement of salary and benefits" is an "appropriate remedy" where an employee is alleged to have breached the duty of loyalty by secretly competing with his employer. *E.g., Serv. Emp. Int'l Union, Local 250 v. Colcord*, 160 Cal. App. 4th 362, 371 (2008). Thus, the Court finds that Plaintiffs have sufficiently alleged damages as to their first three causes of action. Moser contends that none of the transactions identified in the complaint, including those cited above, resulted in losses to Huntair, but that issue remains to be resolved through discovery.

Moser raises additional attacks against Plaintiffs' fraud claim, asserting that Plaintiffs have failed to sufficiently allege any false statements or reliance. The Court rejects both of these arguments. First, Plaintiffs' claim against Moser is based on omissions: his failure to

11

disclose the Reliant scheme to Huntair and his efforts to keep Huntair from learning about the Reliant scheme. Compl. ¶¶ 61(e)-(f). Thus, it would be impossible for Plaintiffs to "allege that Moser made a false statement, what that statement was, to whom it was made and when it was made." Mot. at 19. Moreover, the complaint contains specific allegations as to the Reliant scheme, including the excerpts cited above. *E.g.,* Compl. ¶¶ 30-36 (alleging Moser's involvement in directing particular clients to Reliant beginning in late February 2010); 38(a) (alleging that Moser would steer Huntair/Servicor clients towards Reliant by telling them that they could purchase certain products more cheaply through a vendor such as Reliant rather than through Huntair directly); 41, 43 (alleging communications by Moser concerning the Reliant scheme); 44 (alleging further involvement by Moser in preparing quotes for Reliant – including quote numbers ending with "SM," Moser's initials – sent to Huntair customers in March through May 2010). The complaint also includes allegations concerning Moser's failure to disclose that scheme to Huntair. *E.g., id.* ¶¶ 36 (alleging that on a conference call with a customer and Huntair management, Moser "deflected" a question "to avoid highlighting to Huntair's management that Reliant was doing the installation work"); 44(f) (alleging that Moser sent certain e-mails about Reliant from his personal account "in order to hide his Reliant-related misconduct from Huntair); 49 (alleging that Moser failed to disclose his "involvement in preparing and sending Reliant quotes to Servicor's customers and potential customers" during Plaintiffs' investigation into Moser's and Gladstone's alleged misconduct).

Similarly, reliance is sufficiently alleged at this stage of the proceedings. Plaintiffs allege that Moser was terminated based on his alleged involvement in the Reliant scheme, and it can be reasonably inferred that Plaintiffs continued to employ Moser only because he concealed his participation in that scheme.

In short, the Court rejects all of Moser's arguments concerning the sufficiency of Plaintiffs' allegations on their first three causes of action. Accordingly, Moser's motion to dismiss is DENIED as to Plaintiffs' claims for breach of the duty of loyalty, fraud, and intentional interference with prospective economic advantage.

12

### B. RICO and RICO Conspiracy

Plaintiffs' fourth and fifth claims are for racketeering and racketeering conspiracy under RICO, 18 U.S.C. §§ 1962(c)-(d). "Liability under § 1962(c) requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987).

#### 1. "Pattern"

Moser first contends that Plaintiffs fail to state a RICO claim because a single "scheme" is insufficient to allege a "pattern" and because Plaintiffs have, in any event, failed to satisfy the continuity required to allege a pattern under RICO. *See, e.g., H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (explaining that a "pattern of racketeering activity" requires related predicate acts that "amount to or pose a threat of continued criminal activity"). The Ninth Circuit has explicitly rejected Moser's first argument: "Evidence of multiple schemes is not required to show a threat of continued criminal activity, and, indeed, proof of a single scheme can be sufficient so long as the predicate acts involved are not isolated or sporadic." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citation omitted). Thus, Plaintiffs' RICO claims need not be dismissed simply because all of Plaintiffs' allegations against Moser relate to the single Reliant scheme.

The Court also rejects Moser's second argument as to continuity. The continuity requirement under RICO can be satisfied by a showing of either closed-ended continuity, which requires "a series of related predicates extending over a substantial period of time," or open-ended continuity, which requires "a form of predicate misconduct that by its nature projects into the future with a threat of repetition." *Id.* at 1229 (internal quotation marks omitted). Moser argues that "Plaintiffs defeat their own claim because they severed open-ended continuity when they terminated Mr. Moser in mid-July," Mot. at 23, but this is incorrect. To the contrary, open-ended continuity is satisfied if the allegations demonstrate that, "if they had not been fortuitously interrupted by termination, the predicate acts could have recurred indefinitely." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995). This is precisely the situation in this case. There is no indication that the alleged wrongdoing

13

would have stopped had Moser not been terminated, and Plaintiffs have therefore sufficiently alleged a pattern with open-ended continuity.

### 2. **Predicate Acts**

Moser next argues that Plaintiffs' RICO claim must fail because they have failed to adequately allege mail or wire fraud, the two RICO predicate acts on which Plaintiffs rely. *See* 18 U.S.C. § 1961(1) (listing RICO predicate acts, including mail and wire fraud under 18 U.S.C. §§ 1341 and 1343). "Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Moser raises several arguments, each of which the Court addresses below.

First, Moser contends that Plaintiffs have alleged only that Reliant, and not Moser, prepared quotes and sent them to other companies. This is inaccurate. As noted above, the complaint contains detailed allegations listing specific companies for which Moser is alleged to have prepared the quotes since "SM" appeared at the end of the quote numbers. *E.g.,* Compl. ¶¶ 30, 35, 44. In addition, the complaint contains specific allegations of Moser using the telephone and e-mail as part of the alleged Reliant scheme. *E.g., id.* ¶¶ 36, 41, 43-45.

Second, Moser asserts that "allegations regarding the failure to disclose information, without more, will not suffice for violation of the mail and wire fraud statutes," citing *Schmuck v. United States*, 489 U.S. 705 (1989), for support. Reply at 20. *Schmuck*, however, does not stand for that proposition and, in fact, explained that even mailings "that contain no false information" may suffice. *Schmuck*, 489 U.S. at 714. In addition, in this case, Plaintiffs allege far more than simply the failure to disclose; as required under RICO, they allege a scheme to defraud, intent to defraud, and specific use of the mail and wires to further that scheme.

Third, Moser argues that there are no allegations that the alleged representations were material, as required by *Neder v. United States*, 527 U.S. 1, 25 (1999). Although Plaintiffs did not respond to this argument, it is clear that the pricing information allegedly conveyed

14

by Moser is material – i.e., something for which "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* at 22 n.5 (quoting Restatement (Second) of Torts § 538 (1977)).

Finally, Moser argues that a claim for mail or wire fraud cannot lie where the matter at issue – here, the fact that Reliant was a separate company from Plaintiffs – could have been easily verified. However, Moser cites only a single authority to support this argument, and that case is an unpublished, superceded opinion by the Eleventh Circuit that does not support his position. Instead, the case concludes that reasonable reliance need not be shown in a mail fraud case, and that "there is no requirement that the misrepresented material facts be believable." *United States v. Yeager*, No. 02-11265, 2003 U.S. App. LEXIS 4282, at *9-10 (11th Cir. Mar. 12, 2003), *vacated*, 331 F.3d 1216 (11th Cir. 2003); *see also Neder*, 527 U.S. at 24-25 (explaining that "justifiable reliance" and damages may be elements of common-law fraud, but they are not elements of statutory mail fraud).

Moser has failed to persuade the Court that any of his arguments against Plaintiffs' RICO claim has merit, and the Court therefore DENIES the motion to dismiss this claim.

### 3. **Conspiracy**

Moser next contends that Plaintiffs have failed to state a RICO conspiracy claim under 18 U.S.C. § 1962(d). "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Moser does not argue that Plaintiffs have failed to allege that Defendants conspired to participate in the Reliant scheme, but instead repeats his contention that the allegations concerning that scheme do not constitute substantive violations of RICO. As discussed above, Plaintiffs have sufficiently alleged multiple predicate acts that form a pattern of activity, and RICO does not require that the "pattern" involve more than one "scheme." The Court DENIES Moser's motion to dismiss the RICO conspiracy claim for the same reasons it denies his motion to dismiss the RICO claim.

15

### C. **Lanham Act**

Plaintiffs' Lanham Act claim is based on alleged violations of 15 U.S.C. § 1125(a)(1), which provides that:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, . . . or any combination thereof, or any . . . false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Plaintiffs allege that Moser misled companies into thinking that Reliant was affiliated with Huntair and/or that Huntair was aware of what Reliant was doing. Compl. ¶ 104.

Moser argues that the Lanham Act claim should be dismissed for two reasons: first, because Moser's alleged conduct ended when he was terminated, thus making injunctive relief moot; and, second, because the complaint's allegations "make clear that all customers knew that Huntair and Reliant were separate and distinct entities." Reply at 22. The first argument is incorrect, as one of the alleged misrepresentations occurred after Moser was terminated: "After Moser was terminated by Huntair, Moser indicated to Huntair's client Ameridose that he, Gladstone, and Reliant were still affiliated with Servicor when in fact they were not and are not." Compl. ¶ 104(j).

Moser's second argument is that "there could have been little or no confusion that all customers and potential customers knew that Huntair and Reliant were two separate entities," given the allegations that separate quotes and invoices were sent by Huntair and Reliant. Reply at 22. However, Plaintiffs allege not that Moser represented that the two companies were one and the same entity, but that they were affiliated, which is an independent basis for liability under the Lanham Act.

Accordingly, the Court rejects Moser's two arguments and DENIES the motion to dismiss Plaintiffs' Lanham Act claim.

16

**D.      California Business and Professions Code Section 17200**

On Plaintiffs' unfair competition law ("UCL") claim under California Business and Professions Code section 17200, Moser correctly observes that, "while the UCL applies to wrongful conduct that occurs out-of-state but results in injury in California, regardless of the injured party's citizenship, the UCL does not apply to out-of-state conduct that does not cause injury in California." *Oracle Corp. v. SAP AG*, No. C07-1658 PJH, 2010 U.S. Dist. LEXIS 84381, at *32 (N.D. Cal. Aug. 17, 2010).  At this stage of the proceedings, however, the Court is not persuaded that Plaintiffs cannot state a UCL claim against Moser.  First, it is not clear that Moser did not engage in any wrongful conduct in California, nor has Moser persuaded the Court that his conduct lacks sufficient connection to California to give rise to potential liability under California's UCL.  Second, Moser has not persuaded the Court that Plaintiffs were not injured in California under the facts alleged here.  He has not, for example, cited any authority for the proposition that a company suffers injury only where it is organized or where its principal place of business is located, even if the alleged injury involves diversion of income to a company in another state.  Because Moser has failed to meet his burden, the Court DENIES his motion to dismiss Plaintiffs' UCL claim.

**E.      Conversion**

Plaintiffs have withdrawn their conversion claim against Moser.  The motion to dismiss this claim is therefore GRANTED.

**CONCLUSION**

In sum, the Court concludes that it has specific personal jurisdiction over Moser, and that Moser abandoned his improper venue argument on reply, which instead sought transfer to a more convenient forum under 28 U.S.C. § 1404(a).  The Court will not consider a motion raised only on reply, and Moser did not even suggest a more appropriate venue, let alone present evidence on all of the relevant factors to be considered.  The Court further concludes that Plaintiffs' allegations are sufficient at this stage of the proceedings to state a claim on all causes of action except for conversion, which Plaintiffs withdrew in their

opposition. Accordingly, with good cause appearing, Moser's motion to dismiss is DENIED except as to Plaintiffs' conversion claim, which is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: 02/16/11

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT